## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**BETTY WADE** and
**MARY TYLER,**

       Plaintiffs,

v.                             No. **CIV 02-1077 MCA/WDS**

**IMS SECURITIES, INC.**
and **CANDICE GILL**,
f/k/a **CHARLES GILL**,

       Defendants.

## MEMORANDUM OPINION AND ORDER

     **THIS MATTER** comes before the Court on *Defendant IMS Securities, Inc.'s Motion to Dismiss or, Alternatively, to Stay the Case and to Compel Arbitration* filed October 2, 2002. [Doc. No. 5.] The motion is fully briefed [Doc. Nos. 6, 8, 9, 10, 24[1].], and no oral argument is necessary before resolving this matter. After careful consideration of the parties' arguments and the pertinent

---

[1]      Document No. 24 contains a recent United States Supreme Court opinion supplied by Defendant IMS Securities that Defendant claims is dispositive of this motion. The Court has reviewed Pacificare Health Sys., Inc. v. Jeffrey Book, ___ U.S. ___, 123 S. Ct. 1531 (2003). In Pacificare Health Sys., Inc., the Supreme Court held that "since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract . . . [and] the proper course [was] to compel arbitration." Id. at 1536. While that decision may provide some support for Defendant's position, the Court does not find it dispositive.

law, the Court concludes that this matter should be stayed while arbitration is compelled.[2]   The
Court's reasoning follows.

## BACKGROUND

Plaintiffs Betty Wade and Mary Tyler (Plaintiffs) are retired sisters residing in Rio Rancho,
New Mexico.  [Doc. Nos. 1, 8.]   In early 1997, they met Defendant Charles Gill (Gill), who
apparently changed his/her gender and name at some point after meeting Plaintiffs at an investment
seminar.  Gill was working for IMS at the time.  IMS is a Texas corporation that does business in
Sandoval County, New Mexico in investment counseling and brokerage.  [Doc. No. 1, ¶ 2.]   After
meeting with Gill, Plaintiffs decided to move their investments to IMS.  Subsequently, Plaintiffs claim
they lost almost their entire life savings.  [Doc. No. 1, ¶ 13.]

More specifically, Plaintiffs contend that Gill, while working for IMS, induced Plaintiffs to
turn over their life savings to IMS, "misrepresented the nature of the investments and misrepresented
Plaintiffs' financial situation to use their money to make a profit for IMS . . . and not in furtherance
of Plaintiffs' best interests."  [Doc. No. 8, ¶ 9.]  Plaintiffs state that all of those investments are "either
gone or in bankruptcy and that the bankruptcy will probably not result in any money paid to them."
[Id., ¶ 6.]

On August 28, 2002, Plaintiffs filed a ***Complaint for Damages*** [Doc. No. 1], asserting state
law claims of fraudulent inducement to invest, negligent misrepresentation, breach of fiduciary duty,
and breach of contract, and seeking punitive damages as to those claims.  Plaintiffs also allege

---

[2]

  Defendant Candice Gill is proceeding *pro se* in this litigation.  [Doc. No. 14.]  Ms. Gill did
not file a separate motion to dismiss or stay the case, and did not join in IMS's motion.  However,
the case will be stayed pending arbitration as to both Defendants since Plaintiffs have raised all
claims against both Defendants.

violations of New Mexico's Unfair Practices Act and New Mexico's Securities Act of 1986. Plaintiffs bring this federal lawsuit under 28 U.S.C. § 1331 based on diversity of citizenship.  They further allege that the amount in controversy exceeds $100,000.  [Doc. No. 1, ¶¶ 5, 6.]

IMS denies Plaintiffs' allegations and asserts that this litigation should be stayed pending arbitration based on a New Account/Account Change Form and a Client Investment Suitability and Disclosure Acknowledgment form, both of which contained an arbitration clause that Plaintiffs and Gill signed on April 15, 1997.   On September 27, 2002, IMS notified Plaintiffs via written correspondence that it was electing to arbitrate the dispute under the National Association of Securities Dealers, Inc.  [Doc. 5, Ex. B-2.]  Plaintiffs oppose the request to dismiss and/or stay the litigation pending arbitration.  [Doc. 5, Ex. B-3.]

## I.    DEFENDANT IMS's MOTION TO DISMISS/REQUEST FOR STAY

IMS's motion is characterized first as a request to dismiss and, alternatively, as a request to stay this litigation pending arbitration.  However, the majority of the motion and related pleadings are devoted to the argument that this litigation should be stayed while arbitration proceeds.  IMS's Rule 12(b)(6) request to dismiss this case is based on a number of additional arguments, all of which are briefly spelled out on one-half page of the supporting brief.  [Doc. No. 6, p. 23.]  The Court does not reach those arguments because it concludes that a stay should be issued pending arbitration of this matter.[3]

---

[3]

An order compelling arbitration ordinarily is not a final order for purposes of appeal.  L. A. Adams v. Merrill Lynch Pierce Fenner & Smith, 888 F.2d 696, 698 (10th Cir. 1989).

IMS's motion for a stay relies on arbitration clauses found in two separate documents signed by Plaintiffs on April 15, 1997.  The New Account/Account Change Form appears to be a two-page document that sets forth the following arbitration provisions:

> **Arbitration –** The below signed agrees and by carrying an account for the named entity you agree that all controversies which may arise between us concerning any transaction or the construction performance or breach of this or any other agreement between us, whether entered into prior on or subsequent to date hereof, shall be determined by arbitration.  Any arbitration under this agreement shall be determined pursuant to the arbitration laws of the State of Texas, before the American Arbitration Association, or before the New York Stock Exchange, Inc. or Arbitration facility provided by any other exchange or the National Association of Securities Dealers, Inc., or the Municipal Securities Rulemaking Board and in accordance with its rules then obtaining.  The entity named may elect in the first instance whether arbitration shall be by the American Arbitration Association or by the New York Stock Exchange, Inc., or other exchange or Market facility, but if the entity named fails to make such election, by registered letter or a written request from you to make such election, then you may make the election.

> **Arbitration Disclosures:**
> –    Arbitration is final and binding on the parties.
> –    The parties are waiving their right to seek remedies in court, including the right to jury trial.
> –    Pre-Arbitration discovery is generally more limited than and different from court proceedings.
> –    The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
> –    The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

[Doc. 5, Ex. A-1.]  The client and IMS representative signature lines and signatures are located almost immediately beneath this arbitration clause.

There is a second form, signed only by Plaintiffs, that contains an additional arbitration clause. The Client Investment Suitability and Disclosure Acknowledgment form is another two-page

document listing possible client objectives and investment preferences.  [Doc. 5, Ex. A-2.]  Near the

bottom of Page 2, the following language appears:

> Further, I agree that all controversies between the client, any Registered Representative of IMS Securities, Inc. and IMS Securities, Inc. as broker/dealer, concerning any transaction or the construction, performance or breach of this or any agreement between us, whether entered into prior, or, or [sic] subsequent to this date shall be determined by arbitration.  [S]uch arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association then applying.  The award of the arbitrators or the majority of them shall be final and binding, and not subject to review or appeal.  Judgment upon any arbitration award rendered may be entered in any court having appropriate jurisdiction.

Again, the signatures of Plaintiffs are located almost immediately after this arbitration language.  Both

documents were signed on April 15, 1997.  Although Gill's name is inserted in the text of Page 2 of

the second document, it does not appear that Gill actually signed it on behalf of IMS.  [Doc. No. 5,

Ex. A-2, p. 2.]  This second document also contains language to the effect that the undersigned

"understand[s] that I should consult my personal counsel, accountant and/or other advisors as to the

legal, tax, economic and other consequences of the investment product(s) and its suitability for me."

IMS argues that Plaintiffs' claims fall within the terms of one or both of these arbitration

clauses and that, therefore, the litigation should be stayed pending arbitration.  Plaintiffs counter with

several arguments.  First, they assert that IMS's election of Texas law in the first document's

arbitration clause "renders this action subject to Texas law on the issue of enforceability of the

arbitration clause at issue."  Plaintiffs further assert that Texas law, unlike federal law and the Federal

Arbitration Act (FAA), supports a finding that Plaintiffs' allegations of fraud in the inducement of the

general contract suspends the application of the arbitration clause[s].

Alternatively, Plaintiffs contend that even if the FAA applies to the arbitration clause[s], their claims are not covered by the express language of those clauses. Stated differently, Plaintiffs argue that the arbitration clause[4] limits the types of claims that are subject to arbitration, and that their claims fall outside the clause. Finally, Plaintiffs unconvincingly assert that their claims actually do attack the arbitration clause. If the latter were true, Plaintiffs' argument might prevail. However, Plaintiffs fail to convince the Court that any of their claims or allegations specifically challenge the arbitration clause.

**DISCUSSION**

**II.   PERTINENT LAW REGARDING ARBITRATION OF CLAIMS**

**A.   Texas Law**

Plaintiffs rely on Volt Info. Sciences v. Leland Stanford Junior Univ., 489 U.S. 468 (1989) for the proposition that Texas law should govern the question of arbitrability when an arbitration clause references a specific choice of law forum. [Doc. No. 8, pp. 5-6.] The serious failing of Plaintiffs' position is that even if Texas law did apply, it is of no assistance to Plaintiffs.

In Volt Info. Sciences, Inc., the arbitration clause stated that the parties agreed that arbitration would be governed by the law of California (or the law of the place where the subject "project" was located). The Supreme Court affirmed the lower court's holding that the parties were at liberty to choose the terms under which they would arbitrate, and that they had, in that case, chosen the application of the California arbitration statute. Thus, California arbitration law was not pre-empted by the FAA. Id. at 472.

---

[4]   Plaintiffs reference only one of the arbitration clauses and do not discuss the clause found in the Acknowledgment form.

Volt Info. Sciences, Inc. might have supported the Plaintiffs' position here if the Texas arbitration statute were like the California statute.  However, Plaintiffs acknowledge the distinction between the California and Texas arbitration statutes, and explain that they do not rely on the application of the Texas arbitration statute.  Plaintiffs claim instead that the common law of Texas provides that an arbitration clause may be avoided if the entire contract is procured by fraud.  They cite a number of Texas cases in support of this proposition.

Plaintiffs' argument is curious at best because the cases cited do not clearly stand for the proposition they assert.  For example, Plaintiffs cite Gulf Interstate Eng'g Co. v. Pecos Pipeline & Producing Co., 680 S.W.2d 879 (Tex. Ct. App. 1984), which discussed an arbitration clause stating that the contract was subject to arbitration under the Texas General Arbitration Act.  Even that aspect of the case is slightly different than the facts at issue here, which do not specifically allude to the state arbitration act.  More importantly, the Texas court interpreted the Texas act to mean that a defense to an agreement arbitration exists when the arbitration provision, rather than the contract as a whole, was unconscionable when made, which was the allegation in that case.  Id. at 881.  In other words, the Texas court found record evidence that one party fraudulently induced the other to "include the arbitration clause in the contract."  Id.  Gulf Interstate Eng'g Co. clearly presented facts unlike those in the present case where the challenge is to the contract as a whole, and not the arbitration clause itself.

Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co., 849 S.W.2d 380 (Tex. Ct. App. 1993) is similarly of little help to Plaintiffs.  Initially, Hearthshire Braeswood Plaza Ltd. P'ship might be read to mean that a claim of fraudulent inducement, as to the contract as a whole, is sufficient to defeat an arbitration clause.  But, the Court concluded that because there was no evidence of fraud

in the inducement of the contract as a whole, it was unnecessary to decide the exact issue before this

Court, i.e., whether fraud in the inducement of the contract as a whole can be used as grounds to

defeat an arbitration clause.  Id. at 387.  Moreover, the Texas court noted that "[a]rbitration is

favored by the courts of this state" and that the law favors arbitration.  Id. at 380.

       Prudential Securities Inc. v. The Honorable J. Manuel Banales, 860 S.W.2d 594 (Tex. Ct.

App. 1993), also relied upon by Plaintiffs, repeats this familiar refrain.  "Arbitration is favored under

both state and federal law. . . .  Moreover, once the trial court determines that a valid agreement to

arbitrate exists and that the claims raised fall within the scope of that agreement, it has no discretion

but to compel arbitration and stay its proceedings pending arbitration."  Id. at 596-97.  Perhaps there

is an inference that Banales supports Plaintiffs' position, but in Banales, the party opposing arbitration

failed to make a showing of fraud to defeat the arbitration clause.  Under those facts, the trial court

had no choice, but to summarily grant the motion to compel arbitration.  Id. at 597.  Thus, the Court

cannot interpret Banales to hold that a claim of fraud in the inducement as to the whole agreement

was a defense to an agreement to arbitrate because the Texas court again did not reach that exact

issue.

       Moreover, more recent Texas decisions, both published and unpublished, have noted that

allegations of fraud in the inducement of entire agreement must be decided by the arbitrator.  Hwa

Ha Enters., Inc. v. Yangzi River Ltd., 2002 WL 1316219 n.3 (Tex. Ct. App. 2002).  See also Pepe

Int'l Dev. Co. v. Pub Brewing Co., 915 S.W.2d 925, 930 (Tex. Ct. App. 1996) (fraud in the

inducement of an arbitration provision is a matter for the trial court, while fraud in the inducement

of an entire agreement is a matter for the arbitrator).  Moreover, the Texas Court of Appeals recently

held that as to questions of whether federal or state arbitration laws apply, the FAA preempts all

otherwise applicable state laws, including the Texas General Arbitration Act.  American Realty Trust, Inc. v. JDN Real Estate-McKinney, L.P., 74 S.W.3d 527, 530 (Tex. Ct. App. 2002).  "The FAA applies if the arbitration clause is part of a written contract '"evidencing a transaction involving commerce."'  '"Commerce"' is construed broadly under the FAA and encompasses contracts relating to interstate commerce.  The amount of commerce need not be substantial for the FAA to apply." Id.  (Internal citations omitted.)

Accordingly, the Court rejects Plaintiffs' argument that Texas common law supports their position that the arbitration clause should not be applied.  Instead, federal law and, more specifically, the FAA, applies to determine this question.

### B.    Federal Law:  The Federal Arbitration Act (FAA)

The purpose of the FAA was "to overcome courts' refusals to enforce agreements to arbitrate."  Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270 (1995).  Federal policy now favors arbitration.  Peterson v. Shearson/American Express, Inc., 849 F.2d 464, 465 (10th Cir. 1988). The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

Section 4 of the FAA provides a remedy to a party who seeks to compel compliance with an arbitration agreement.

> The court shall hear the parties, and upon being satisfied about the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .  If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.  According to the Supreme Court decision in <u>Prima Paint Corp. v. Flood & Conklin</u> <u>Mfg. Co.</u>, 388 U.S. 395, 404 (1967), the federal court will proceed to order a matter to arbitration unless there is an issue as to a claim of fraud in the inducement of the arbitration agreement itself. <u>See</u> <u>also</u> <u>Telum, Inc. v. E.F. Hutton Credit Corp.</u>, 859 F.2d 835, 837 (10th Cir. 1988) (allegations of fraud in the inducement relating specifically to the arbitration clause may suspend application of that provision), <u>cert. denied</u>, 490 U.S. 1021 (1989).  However, the statutory language of the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally."  <u>Prima Paint Corp.</u>, 388 U.S. at 404.  Where fraud in the inducement is at issue, a court "must defer to the arbitrator except where the alleged fraud was directed specifically to the arbitration clause itself ."  <u>Audio Video Center, Inc. v. First Union Nat'l Bank</u>, 84 F. Supp. 2d 624, 626 (E.D. Pa. 2000).  Stated differently, "[t]he teaching of *Prima Paint* is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself."  <u>Spahr v. Secco</u>, 330 F.3d 1266, 1272 (10th Cir. 2003) (internal citation omitted).

Here, Plaintiffs' claims attack the general agreement, and not the arbitration clause itself. Their claims of fraudulent inducement to invest, false representations, negligent misrepresentation, breach of fiduciary duty, and failure to disclose material facts regarding the investment tools used, etc., all deal with the general agreement to invest monies with IMS.  [Doc. 1.]  Plaintiffs assert that Gill convinced them to make investments that were ill-fated and that Gill falsified books and records "concerning financial information on subscription documents and new account information in order to qualify Plaintiffs for the recommended investments."  [Doc. 8, ¶ 7.]  However, none of the allegations in the Complaint address, or even mention, the arbitration clause.

Moreover, Plaintiffs' opposition brief contains only one brief attempt to claim they are "specifically attacking the viability of the arbitration clause. . . ." [Doc. 8, p. 8.] This argument is unavailing. Plaintiffs allege that Gill fraudulently inserted incorrect financial information in the investment forms and that the documents Plaintiffs signed were materially different than those that IMS now seeks to enforce. Ms. Wade provides affidavit testimony that Gill filled out the New Account form in a misleading way because it contains both sisters' name while the document clearly was intended to be filled out by one person. [Doc. 8, Wade Affidavit, at ¶ 10.] Ms. Wade further alleges that Gill improperly combined the sisters' net worth to reach the numbers he needed for the investment, and that he inserted income information that was incorrect. She asserts that Gill hurried them with the forms and that they relied on Gill to fill the forms out in accordance with their needs. [Id.]

However, Plaintiffs provide no evidence to show that they did not sign the page containing the arbitration clauses. Indeed, they admit they signed the forms [id., at ¶ 10, p. 4.], even though they do not recollect signing them with the financial information inserted by Gill. Plaintiffs do not claim that the signatures on that page are not their signatures, nor do they allege that any fraudulent insertions were made to the arbitration provisions. There are no allegations that the arbitration was hidden in fine print or concealed from Plaintiffs, that it was added surreptitiously to the document after Plaintiffs signed it, or that they could not understand the arbitration provision. In fact, Ms. Wade makes no representations at all regarding the arbitration clause.

The Court concludes that Plaintiffs' claims of alleged misrepresentations and fraudulent insertions go to the essence of the contract to do business and make investments with IMS, rather than any aspect of the arbitration clause. To avoid arbitration, Plaintiffs had to specifically link the

claim of fraud to the arbitration clause itself.  Advanced Technology Associates, Inc. v. Seligman, 1997 WL 756604 at *3 (D. Kan. Nov. 18, 1997) (*relying on* Prima Paint Corp.).  They failed to do so and, therefore, cannot escape the arbitration clause based on an unsupported claim that their challenge is to the arbitration clause.

### C.    Scope of Arbitration Agreement

The FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Thus, in deciding whether to grant a motion to stay pending arbitration, the trial court determines (1) whether there was an agreement to arbitrate and (2) the scope of that agreement.

Plaintiffs do not disagree that an agreement to arbitrate exists in the documents they signed. However, they challenge the scope of the arbitration clause by arguing that the language in the New Account/Account Change Form is limited to certain types of investment transactions, rather than the alleged fraudulent formation of the investment relationship or fraudulent inducement to invest with IMS.  The term "transaction" is contained in both arbitration clauses.  More specifically, Plaintiffs assert that "to grant Defendant's Motion, the Court must conclude that Plaintiffs' claims relate to the construction, performance, or breach of any agreement between Plaintiffs and Defendant" and that their Complaint does not center on these issues.  [Doc. No. 8, pp. 7-8.]

The Court disagrees with Plaintiffs interpretation of the arbitration clauses.  The New Account form contains broad arbitration language stating that the signatories "agree that all controversies which may arise between us concerning any transaction or the construction performance or breach of this or any other agreement between us . . . shall be determined by arbitration."  [Doc. No. 5, Ex.

-12-

A-1, p. 2.] Similarly, the arbitration clause in the Acknowledgment form states that "all controversies between the client, any Registered Representative of IMS . . . concerning any transaction or the construction, performance or breach of this or any agreement."  [Id., Ex. A-2, p. 2.]

The Supreme Court has clearly stated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ."  Moses H. Cone Mem. Hosp., 460 U.S. at 24-25. The Tenth Circuit has stated similarly that "we must interpret arbitration clauses liberally."  Armijo v. Prudential Ins. Co. of America, 72 F.3d 793, 798 (10th Cir.1995); Stifel, Nicolaus & Co. v. Woolsey & Co., 81 F.3d 1540, 1546 (10th Cir. 1996).  Moreover, to acknowledge that an ambiguity in the arbitration clause exists "is to resolve the issue, because all ambiguities must be resolved *in favor* of arbitrability."  Armijo, 72 F.3d at 797 (emphasis in original).

The Court concludes that the arbitration language is clearly broad enough to encompass Plaintiffs' claims against IMS and Gill.  Indeed, courts have held that contracting parties control their own fate when it comes to determining which disputes may be subject to arbitration.  "On the one hand, they may delineate precisely those claims that are subject to arbitration or, on the other, they may employ general—even vague—language in their arbitration provisions."  Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 643 (7th Cir. 1993).  Here, the parties have agreed to a general, if not vague, arbitration clause that encompasses the claims at issue.[5]

Finally, the Court observes that it "has the inherent power to grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending

---

[5]     The Court is sympathetic to Plaintiffs' claims, particularly if proven true, and in view of Gill's suspension from the association with any NASD member based on these allegations and others.  [Doc. 8, Ex. 2.]  Nonetheless, Plaintiffs provide no legal basis to avoid arbitration of this dispute.

before it." <u>Webb v. R. Rowland & Co.</u>, 800 F.2d 803, 808 (8th Cir. 1986); <u>United Steelworkers of America v. Oregon Steel Mills, Inc.</u>, 322 F.3d 1222, 1227 (10th Cir. 2003).  The district court's decision as to such issues is committed to its sound discretion and will be overturned only upon a showing of an abuse of this discretion.

For all of the above-stated reasons, the Court grants IMS's motion to stay pending arbitration of the dispute.

**IT IS, THEREFORE, ORDERED** that *Defendant IMS's Motion to Dismiss or, Alternatively, to Stay the Case and to Compel Arbitration* filed October 2, 2002 [Doc. No. 5.] is **GRANTED** to the extent that the case is stayed pending arbitration.

**SO ORDERED**, this 25th day of July, 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*